ELEANOR S. GELTMAN, PETITIONER-APPELLANT, v. RE-
LIABLE LINEN & SUPPLY COMPANY, DEFENDANT-
RESPONDENT.

Submitted February term, 1942—Decided April 23, 1942.

For the appellant, *David Roskein* (*Harry Cohn,* of counsel).

For the respondent, *Clarence B. Tippett.*

The opinion of the court was delivered by

HEHER, J. The question for decision is whether the facts as found by the Supreme Court reveal that the employee's death was due to an accident which arose out of and in the course of his employment within the intendment of *R. S.* 1937, 34:15-7, *et seq.* If it be resolved in the affirmative, there was error in matter of law in the dismissal of the petition for compensation interposed on behalf of the dependents.

There was an "accident" in the legislative view. The expression is used in the popular and ordinary sense and has a wide signification. Its accepted definition is "an unlooked-for mishap or untoward event which is not expected or designed." *Bryant, Adm'x,* v. *Fissell,* 84 *N. J. L.* 72. The English Compensation Act of 1906 (6 *Edw. VII,* 1906, *ch.* 58, ¶ 1 (1)) is the prototype of ours; and the interpretation of this common basic provision adopted by the courts of that country may well be considered in determining the legislative intent. *Hall* v. *Doremus,* 114 *N. J. L.* 47. Indeed, the definition approved in *Bryant, Adm'x,* v. *Fissell, supra,* is Lord Macnaghten's in *Fenton* v. *Thorley & Co., Ltd.* (1903), *A. C.* 443, construing the like provision of the earlier act of 1897. 60, 61 *Vict.* (1897), *ch.* 37, ¶ 1 (1). In the later case of *Trim Joint District School* v. *Kelly* (1914), *A. C.* 667; 7 *B. W. C. C.* 274, an assistant master of a training school for children suffered a fatal skull fracture at the hands of boys under his charge who had entered into a conspiracy to assault him in retaliation for unwelcome discipline; and the House of Lords categorized the occurrence as an accident within the purview of the statute, not the less so "merely for the reason that it was caused by deliberate violence." Viscount Haldane, L. C., read the word "designed" in Lord Macnaghten's definition as referring to "designed by the suf-

ferer." He continued: "If the object of this statute be as wide as I gather from the study of its language, its construction must, as it appears to me, be that accident includes any injury which is not expected or designed by the workman himself. * * * To take a different view appears to me to amount, in the language of Mathew, L. J., in *Challis* v. *L. and S. W. R. Co.* (1905), 2 *K. B.* 154; 7 *W. C. C.* 23, to the reading into the act of a proviso that an accident is not to be deemed within it if it arises from the mischievous act of a person not in the service of the employer." If, he said, the workman is the victim of "unexpected misfortune," the consequent injury is compensable, subject to the all-important limitation that the "risk should have arisen out of and in the course of the employment."

And Lord Loreburn, concurring in the judgment, stated that the term "accident" is to be construed "in the popular sense, as plain people would understand it," but also "in its setting, in the context, and in the light of the purpose which appears from the act itself." After pointing to the variety of meanings in ordinary usage, he declared: "In short, the common meaning of this word is ruled neither by logic nor by etymology, but by custom, and no formula will precisely express its usage for all cases." Addressing himself to the argument that the employee "could not have been killed by accident because he was struck by design," he observed: "Suppose some ruffian laid a log on the rails and wrecked a train, is the guard who has been injured excluded from the act? Is a gamekeeper who is shot by poachers excluded from the act? There was design enough in either case, and of the worst kind. In either case I should have thought, if you looked at the nature of the man's employment, you might say he was injured by what was accident in that employment. * * * I find that to treat the word 'accident' as though the act meant to contrast it with design would exclude from what I am sure was an intended benefit, numbers of cases which are to my mind obviously within the mischief. That makes me realize the value of the old rule about construing a remedial statute. Just as in the case of the guard or the gamekeeper, so here, this man was injured by what was accident in the

employment in which he was engaged. It is not the less so that the person who inflicted the injury acted deliberately." This interpretation was followed in *Reid* v. *British and Irish Steam Packet Co., Ltd.* (1921), 2 *K. B.* 319; 14 *B. W. C. C.* 20, and in *Parker* v. *Federal Steam Navigation Co., Ltd.* (1925), 18 *B. W. C. C.* 469. It is of no significance in this regard that disease had rendered the heart incapable of withstanding the shock.

In the case at hand, the cause of death was a fibrillation and impairment of the blood circulation of the heart—an acute anoxemia of the heart—due to emotional and nervous shock attending the assault; and this is no less a "personal injury by accident" than if it had ensued from physical impact. *Hall* v. *Doremus, supra.* The physiological injury is as certain and definite in the one case as in the other; and the design of the statute plainly is to render compensation for the disability flowing from an accident having the prescribed relation to the employment. *Vide Sigley* v. *Marathon Razor Blade Co.,* 111 *N. J. L.* 25.

Concededly, the accident happened in the course of the employment. The workman was engaged in the master's service when the fatal altercation occurred, so much so that negligence in the operation of his vehicle at that time would have been imputable to the master. *Auer* v. *Sinclair Refining Co.,* 103 *N. J. L.* 372; *Lewis* v. *National Cash Register Co.,* 84 *Id.* 598. He was then proceeding, in obedience to the master's direction, to his area of service as a salesman for the purpose of making a canvass in accordance with specific instructions. The motor vehicle was his own, but it was used in the employment for a weekly sum paid by the master in addition to his wages to cover "operating expenses."

Did the accident also arise out of the employment in legislative intendment? We think so.

An accident arises out of the employment if it ensues from a risk reasonably incident thereto. To take this classification, the accident must in some sense be due to the employment. The legislative purpose was to provide for the hazard of accident within the scope of the employee's work. A risk is incidental to the employment when it belongs to or is connected

with what the workman has to do in fulfilling his contract of service. And such a risk may be either an ordinary one, directly connected with the employment, or one extraordinary in character, indirectly connected therewith because of its special nature. *Bryant, Adm'x,* v. *Fissell, supra.*

In fine, there must needs be a causal connection between the accident and the employment or it does not fall into the statutory class. If the danger was one to which the employee was exposed because of the nature of his employment, the accident arose out of the employment. It is in this category if there be a causal relation between the injury and the conditions under which the work is required to be done. The service is then a contributing proximate cause; the injury is traceable to a hazard of the employment. It need not have been foreseen or expected; it suffices if the injury flowed as a rational consequence from a risk connected with the employment. *Hall* v. *Doremus, supra.* The doctrine that a tortfeasor is liable only for the natural effects of his negligent act is not applicable to this class of cases. *Hall* v. *Doremus, supra; McDonough* v. *Sears, Roebuck & Co.,* 127 *N. J. L.* 158.

*Reverting to the case of Trim Joint School District* v. *Kelly, supra,* Lord Loreburn had this to say in disposing of the contention that "the risk of being killed by schoolboys" cannot be considered "as incidental to or arising out of a schoolmaster's employment because no one would contemplate so extraordinary an occurrence:" "This argument illustrates the danger of trying to convey what an act means by using expressions which are not found in it. I do not repent of having myself, as have other judges, in trying to convey my thoughts, spoken of risks incidental to an employment, but that does not mean merely risks which ordinarily occur in it. * * * In inquiring whether or not an injury by accident in fact arises out of the employment, it surely is unnecessary to ask whether such a thing has ever happened before or is likely to happen again within, say, a hundred years, or, for that matter, for ever. It may happen, and has happened, and it has happened because the poor man was a schoolmaster. The event has proved that it arose out of his employment. I can see no reason for saying that there is to be compensation

only when the misadventure was one which would be foreseen as probable, or contemplated as possible, or otherwise apprehended either by the workman or by his employer, or by a county court judge. All this has, in my view, no conclusive bearing on the simple question, Did it in fact arise out of the employment?"

Here, as pointed out by the Supreme Court, the employee was "forced" by the operator of the other vehicle "to drive to the side of the road and stop," and was immediately thereafter assaulted in resentment of the manner in which he had driven his automobile in fulfillment of the master's service; and so his death was the consequence of a risk reasonably incident to the employment—a risk connected with what he was obliged to do in the performance of his work. It was a hazard incident to the use of the highway in the pursuit of the master's business. The employee was still at the wheel; he had not separated himself from his employment. The peril was one inseparable from the line of duty. The danger was one to which the employee was exposed because of the nature of his duties. The accident was not the consequent of a purely personal quarrel unrelated to the employment. It is the settled rule that if the employment "is one of the contributing causes without which the accident which actually happened would not have happened," the statutory requirement in this behalf is met. *Newcomb* v. *Albertson,* 85 *N. J. L.* 435; *Terlecki* v. *Strauss,* 85 *Id.* 454; affirmed, 86 *Id.* 708; *Furferi* v. *Pennsylvania Railroad Co.,* 117 *Id.* 508.

What happened here is just as much an accident traceable to the employment in the view of the statute as if death had ensued from a collision between the vehicles chargeable to the negligence of the third party; and it is settled that this hypothetical case is within the statute. *Berry* v. *Silent Automatic Sales Co.,* 111 *N. J. L.* 382; *Foley* v. *Home Rubber Co.,* 89 *Id.* 474; affirmed, 91 *Id.* 323. It is "a matter of daily occurrence that employees are required to do their work under conditions which render them liable to injury by outside agencies." *Zabriskie* v. *Erie Railroad Co.,* 86 *Id.* 266; *Newark Paving Co.* v. *Klotz,* 85 *Id.* 432; affirmed, sub nom. *Klotz* v. *Newark Paving Co.,* 86 *Id.* 690; *Bolos* v. *Trenton*

*Fire Clay, &c., Co.,* 102 *Id.* 479; *Ramsey* v. *Leahey,* 102 *Id.* 513.

The instant case is clearly distinguishable from those in which the attack upon the employee was in no real sense related to the employment. Compare *Foley* v. *Home Rubber Co., supra.* There Mr. Justice Kalisch declared: "It may be well said that those whose employments require them to travel by land or sea are known by their employers to be subject to the common perils that such traveling incurs. The risk is inherent in the employment itself. The manner in which the accident is brought about is not at all of the essence of the matter, the vital question always being, was the accident connected with the employment? If it was, then it arose out of the employment, provided it occurred in the course of the employment."

In *Dennis* v. *White (A. J.) Co.* (1916), 2 *K. B. Div.* 1; 10 *B. W. C. C.* 280, the workman collided with a motor car while proceeding on a bicycle to procure some plaster for his employer; and it was held that the accident arose out of the employment. Lord Finlay said that where "the work itself involves exposure to perils of the streets the workman can recover for any injury so occasioned. * * * There is nothing in the act about any necessity for showing that the employment involves an extra or special risk, and once it is clear, as it is in the present case, that the accident was the result of a risk reasonably incident to the performance of the servant's work, all inquiry as to the frequency or magnitude of the risk is irrelevant. It is quite immaterial whether the nature of the employment involves continuous or only occasional exposure to the dangers of the streets. The frequency of the exposure to a risk increases the chance of the occurrence of an accident, but it has no bearing on the question whether it arose out of the employment, which is settled by the fact that such exposure was one of its terms whether on many occasions or on one." For applications of this principle to varying circumstances, see *Hartford Accident and Indemnity Co.* v. *Cardillo,* 112 *Fed. Rep.* (2d) 11; *Hartford Accident and Indemnity Co.* v. *Hoage,* 66 *App. D. C.* 160; 85 *Fed. Rep.* (2d) 417; *Greenberg* v. *Voit,* 250

N. Y. 543; 166 N. E. Rep. 318; Leonbruno v. Champlain Silk Mills, 229 N. Y. 470; 128 N. E. Rep. 711; 13 A. L. R. 522; Connelly v. Samaritan Hospital, 259 N. Y. 137; 181 N. E. Rep. 76.

It is unnecessary to set the seal of approval to the reasoning of all of these last cited cases. It suffices to say that the particular hazard was an incident of the service. There existed the requisite causal connection between the assault and the conditions attending the transaction of the employer's business. Hot-tempered controversies respecting the management of motor vehicles on our busy thoroughfares are not at all uncommon. What happened was an accident directly attributable to a risk of the highway to which the employment exposed the victim; and it was therefore related to the employment in the statutory conception.

In Connelly v. Samaritan Hospital, supra, a workman employed in a laundry fell, and, in falling, struck a table used in the conduct of the business, and was injured. The fall was found to have been due to a cardiac condition. The Court of Appeals of New York, in ruling that the accident arose out of the employment, declared that "Whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment." There, it was not the fall itself but the injury resulting from the employee's striking the table that was deemed to bring the case within the statutory class. Injury "by striking against the table near which" the employee "was working at the time of the fall" was termed a hazard "attached to the place of employment."

The judgment of the Supreme Court is accordingly reversed, and the judgment of the Court of Common Pleas affirmed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, DONGES, HEHER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 11.