RUTH D. RATHBUN, Claimant and Appellant, *v.* TABER
TANK LINES, INC., Defendant and Respondent, and LIB-
ERTY NATIONAL INSURANCE CO., Defendant and Re-
spondent.

No. 9468.
Submitted February 18, 1955.   Decided March 25, 1955.
As Amended on Denial of Rehearing May 20, 1955.
283 Pac. (2d) 966.

122

F. N. Hamman, Polson, J. H. McAlear, Red Lodge, for appellant.

H. L. McChesney, Floyd O. Small, Helena, for respondent.

Sam D. Goza, Helena, Arthur H. Lalime, Butte, Murphy, Garlington & Pauley, Missoula, Coleman, Jameson & Lamey, Billings, Howard C. Burton, Great Falls, Frank I. Haswell, Whitefish, W. W. Wertz, Helena, amici curiae, urging that a rehearing be granted.

William T. Kelley, James F. Battin, Billings, Leo C. Graybill, Jr., Great Falls, Joseph M. Goldman & Lee Jordan, Missoula, Leif Erickson, Helena, amici curiae, urging that the petition for rehearing be denied.

Mr. McAlear and Mr. Small argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff brought this action to recover compensation for the death of her husband who was employed by the defendant company as a truck driver at the time of his death. After hearing before the industrial accident board, that board denied compensation. An appeal was taken to the district court and the court sustained the action of the industrial accident board. This appeal followed.

The board found:

"V. That competent medical evidence established that at the time immediately prior to the death of Paul G. Rathbun,

there were no unusual atmospheric conditions constituting a risk to the deceased, and there were no sudden changes in his working environment that constituted any physical danger to a person in his circumstances.

"That the deceased was subjected to no undue strain or exertion during the time immediately preceding his death, which would tend to increase the burden on his heart.

"VI.   That competent undisputed medical testimony established that the death of the deceased, Paul G. Rathbun, was caused by a failure of the heart by reason of its previously diseased condition."

The board concluded:

"I.   That the death of Paul G. Rathbun on December 4, 1952 did not occur by reason of injury from a fortuitous event as defined by section 92-418, R.C.M. 1947, but was the result of a condition of disease.

"II.   That the death of Paul G. Rathbun did not arise out of his employment in accordance with Section 92-614, R.C.M., 1947."

Among other findings the court found, "That the decedent died while operating a tank truck belonging to the employer, and that while so proceeding along the highway the deceased suddenly collapsed and died at the wheel of his truck; that at the time, or immediately prior to his death, there were no unusual conditions nor sudden changes in his working environment; and that said Paul G. Rathbun was not subjected to any kind of accident or undue strain or exertion during the period immediately preceding his death, but that from all of the evidence in this case, it appears that the death of the deceased, Paul G. Rathbun, was caused by a failure of the heart by reason of his previously diseased condition, and not as the result of any accident or fortuitous event."

As before stated, Rathbun was a truck driver. At the time of his death he was 35 years of age, having a wife and two children. He started work for the defendant company in July 1951. He left Great Falls driving one of the trucks on the eve-

ning of December 3, 1952, between seven and eight o'clock in the evening. At the Union Oil Refinery in Cut Bank he loaded a load of gasoline for transportation to Polson. He drove the truck and trailer all night over the Marias Pass, which is a winding road with many sharp curves and was at that time slippery and icy. There is evidence that by reason of the condition of the highway he must have been subjected to unusual stress and strain in driving the truck over these roads.

He arrived in Polson about seven-thirty in the morning of December 4th. He then appeared exhausted and tired out. He had breakfast at Polson at the home of his father, while his gasoline was being unloaded. He did not rest while at Polson, but left about ten o'clock in the morning on the return trip. When he reached Cut Bank he received orders to go to Kevin and load his truck at that point and take it into Great Falls.

He arrived at Kevin about six o'clock in the evening. While his truck was being loaded he rested in the cab of the truck. After the truck was loaded and about seven o'clock in the evening he started from Kevin on his way to Great Falls. Approximately four miles east of Kevin, and about 500 feet westerly from Four Corners, where the road intersects the Shelby-Oilmont road, he was found dead sitting at the steering wheel of the truck. The truck had gone off the road into a borrow pit. As he sat at the steering wheel his head had dropped to his right, and his left hand was on the seat of the truck, and his feet were on the floor of the truck.

The trailer, which was attached to the truck, was on the slope of the highway with the left rear wheel still on the shoulder of the road. The engine of the truck was still running, the lights were on and the gear had been shifted into neutral. The air brakes were partially on, and the ventilator window on the driver's side of the cab was open. There was evidence that his clothing showed signs of perspiration at the time, but there were no marks of violence, bruises or cuts on his body. The tachometer of the car showed that the driver had revved up the motor as was customary at about this point on the highway because it

was near the top of a knoll. The point where the truck went into the borrow pit was about 100 feet easterly from the knoll, and tachometer showed that when the truck went over the grade it was going three or four miles per hour. The horn is sounded by pulling a cord situated a little over the driver's head. Mr. Vandeberg, who lives near where the truck ran into the borrow pit, stated by affidavit before the board that there was a blast of the horn just before the truck reached a point opposite his house. There is evidence that in the 11 months preceding his death, Rathbun had worked long hours without regular sleeping periods. Many trips would require 16 hours or more of driving time. During those 11 months he gained in weight from 180 or 185 to 220 or 225 pounds. Also during that time he developed coughing spells to the extent that during rest periods his coughing would awaken him. Dr. Keenan examined him on March 20, 1952, pursuant to regulations of the interstate commerce commission and found his heart normal at that time. The evidence shows heavy turnover of drivers because of the strain "and a good many of them just can't take it." The standing orders to the drivers were to "get on the road and get back as soon as possible."

Two days before he met his death, Mr. Rathbun made a similar trip to Polson and return. That trip covers approximately 600 miles and takes about 20 hours of driving time out of 25 or 26 hours necessary for the trip. Between the last two trips made by Rathbun, there was a rest period of about 24 hours. Mr. Rathbun was paid 12¢ per mile for every loaded mile that he traveled, and received nothing while traveling empty. The drivers were given the privilege of stopping and resting or sleeping at any time they desired and sleeping accommodations were provided in the truck. Usually the drivers have a rest period of about 30 hours between trips. No collision accident or unusual happening of any kind occurred on the last trip taken by Mr. Rathbun, save his unexpected death while at the wheel and in the line of duty.

Dr. Fallon examined Rathbun's body within a few minutes

after his death, and he gave it as his opinion that the cause of death was myocardial infarction and that long hours of physical exertion "would generally predispose to such a condition." Dr. Powers testified that any man with a bad heart should not continue to work, and he should be in bed and that exertion is one thing people with bad hearts should avoid. Among other things he said, "Long hours, no matter even if a person is sitting down in an office for long hours, is a strain and the added strain of driving would, in my estimation, be something that would aggravate his heart condition because there is a certain amount of worry. A man driving along, if you have kids to think about you have to be on tension all of the time. Any man driving 16 to 20 hours a day I think that's a strain on a normal man. I don't think they can take it very long."

The doctor testified that any strain, such as the act of applying the brakes, tooting the horn and placing the car in neutral would constitute exertion. He said the mere fact that he reached up to pull out the light might cause him to "blow his heart" if he were in the throes of a ventricular fibrillation. He said there is a reasonable medical probability that the doing of those acts either hastened the man's death or caused it. He said it would aggravate it and it could have caused the death. He said any exertion for a man with a bad heart will tend to contribute to aggravate the condition. Dr. Powers, in response to hypothetical questions, thought Rathbun had some evidence of a rhythmic trouble such as ventricular fibrillation.

The evidence as to the cause of death stands undisputed unless the different names applied to the immediate cause of death given by the doctors for plaintiff may be said to raise a conflict. But both doctors reached the conclusion that driving with lack of sleep produces a nervous tension, and, as Dr. Powers put it, adds up to "hasten a man's death with a bad heart."

Defendant's only witness Taber raised a conflict on immaterial matters having to do with the conditions of employment, but there was nothing to dispute the essential facts of long working hours producing stress and strain on the drivers.

In the state of the record there is no conflict in the evidence on the essential matters on which the right of recovery depends.

In fact both the board and the court apparently denied compensation on the theory that the undisputed facts disclosed no fortuitous event or accident since death followed from the usual work in which the decedent was engaged. The propriety of the conclusion reached from undisputed facts is what is drawn in question here.

Do the foregoing facts show a compensable industrial accident? Section 92-418, R.C.M. 1947, defines "injury" within the meaning of the Workmen's Compensation Act as follows: " 'Injury' or 'injured' refers only to an injury resulting from fortuitous event, as distinguished from the contraction of disease." Not many states have a similar statutory definition of "injury." This court however has defined a "fortuitous event" in the case of Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 Pac. 270, 274, by saying: "The phrase, 'injury arising out of and in the course of his employment,' means that the injury or death resulted from an industrial accident arising out of and in the course of the employment, Wiggins v. Industrial Acc. Board, 54 Mont. 335, 170 Pac. 9, L.R.A. 1918F, 932, Ann. Cas. 1918E, 1164; while the word 'fortuitous,' used in section 2870 [now 92-418], means 'happening by chance or accident; coming or occurring unexpectedly or without known cause; chance; accident' (Webster's New International Dict.), and therefore the 'fortuitous event' referred to is synonymous with 'industrial accident.' "

Essentially then the question is reduced to one as to whether a heart failure may be classified as an industrial accident. The courts throughout the country are not in accord on this question. More and more, however, they are coming to the view that heart failure brought about by unusual stress and strain in employment amounts to an industrial accident for which an award of compensation should be made under workmen's compensation acts substantially the same as ours, when we consider that "fortuitous event" means an industrial accident.

The recent case of Hoage v. Royal Indemnity Co., 67 App. D.C. 142, 90 F. (2d) 387, 390, is a case dealing with facts substantially the same as we have here. In that case the injured employee was employed as a claims adjustor. He worked long hours and, in many instances, not only during the day but at night. He worried over his work and often suffered from fatigue, headaches, insomnia, and heartburn. One morning, while sitting at his desk using the telephone, he suffered a heart attack and was taken to the hospital. Since that time he remained away from his employment and was totally incapacitated for labor. He filed a claim for compensation, basing his claim upon overwork and worry for nine months or more culminating in his disability on May 5th. The claim was denied on the ground that he did not suffer an accidental injury within the meaning of the compensation law, the same being 33 U.S.C.A. section 902. The appellate court, in holding that claimant was entitled to compensation, stated:

"We think that the testimony in the record fully considered tends to show that Mr. Rennie by reason of mental strain, worry, and long and excessive hours of labor suffered a collapse which resulted in his total disability as found by the Deputy Commissioner. We think this collapse constituted an accidental injury within the purview of the statute. His case is comparable to that of a manual laborer whose heart collapses as a result of long continued physical strain or overwork resulting from excessive exertion. * * *"

The court adopted the holding in Thompson v. City of Binghamton, 218 App. Div. 451, 218 N.Y.S. 355, to the effect that the death of a janitor resulting from acute dilation of the heart weakened by chronic myocarditis, and caused by excitement and exertion of answering a false fire alarm at the schoolhouse, was compensable as an accidental injury notwithstanding the absence of a traumatic injury.

It likewise referred to the case of Pickerell v. Schumacher, 215 App. Div. 745, 212 N.Y.S. 899, and to the case of Klein v. Len H. Darling Co., 217 Mich. 485, 187 N.W. 400, in both of which

it was held that there was an industrial accident though there was no external physical injury to the deceased. The court then concluded its opinion by saying, ''It is well known that nervous shock, continued anxiety, and excessive exertion at work under trying circumstances may contribute toward the collapse of persons who are already suffering from hardening of the arteries.''

In Pan-American Airways, Inc. v. Willard, D.C., 99 F. Supp. 257, 259, the court stated its conclusion as follows: ''One may sustain an accident while performing the usual and normal incidents of his employment; it is the occurrence of the event which must be unusual, unexpected and undesigned, not the nature of the work being performed. Thus, 'an accidental injury may occur notwithstanding the injured is then engaged in his usual and ordinary work'. Commercial Casualty Ins. Co. v. Hoage, 64 App. D.C. 158, 75 F. (2d) 677.''

In the case of Jones v. Hamden, 129 Conn. 532, 29 A. (2d) 772, the court reached the conclusion that there may be an accidental injury even though it is incurred in the course of the employee's ordinary work, and that an injury incurred by a workman while performing his work in the normal ordinary way may be an accidental injury and compensable.

The State of Washington in 1911 adopted a statute identical with our section 92-418, so far as it defined an injury as used in the Act. Their statute was later amended. The original and the amended statutes are set forth in the case of McCormick Lumber Co. v. Department of Labor & Industries, 7 Wash. (2d) 40, 108 Pac. (2d) 807, 815. In the opinion in that case the court reviewed all its prior decisions dealing with the question so far as heart cases were concerned. The court concluded that an accident arises out of the employment when it is produced by exertion. The court went further than we need go here and said:

''To say now that some unusual effort or strain is necessary to render death compensable would not only be in direct conflict with the plain and emphatic language of our holdings, but would also introduce an element of uncertainty and confusion,

130

in that every case would present a problem as to the standard to be used in determining whether or not, in a given instance, the exertion was unusual, and whether or not the workman was expending only the ordinary exertion required in a particular line of employment.''

In Jones v. California Packing Corp., Utah, 244 Pac. (2d) 640, 642, the court had before it a heart case apparently caused by long working hours without adequate rest. The court held it constituted an industrial accident, and compensable, notwithstanding the injury did not result from some incident which happened suddenly and though the incident could not be identifiable to a definite time and place.

The court said: ''It is settled beyond question that a pre-existing disease or other disturbed condition or defect of the body, when aggravated or lighted up by an industrial accident, is compensable under the act [citing cases]. And also that an internal failure brought about by exertion in the course of employment may be an accident within the meaning of Sec. 42-1-143, U.C.A. 1943, without the requirement that the injury result from some incident which happened suddenly and is identifiable at a definite time and place. Robertson v. Industrial Comm., 109 Utah 25, 163 Pac. (2d) 331; Thomas D. Dee Memorial Hospital Ass'n v. Industrial Comm., supra [104 Utah 61, 138 Pac. (2d) 233]; Hammond v. Industrial Comm., 84 Utah 67, 34 Pac. (2d) 687; Purity Biscuit Co. v. Industrial Comm., 115 Utah 1, 201 Pac. (2d) 961, 966. In the latter case, Mr. Justice Wade stated: '* * * this court is definitely committed to the proposition that where an employee suffers an internal failure or breakdown which results from overexertion in the course of his employment that such is a compensable accidental injury * * *.' Citing cases.''

Speaking on the same subject, the Supreme Court of Florida, in Gray v. Employers Mut. Liability Ins. Co., Fla., 64 So. (2d) 650, 651, had this to say: ''We wish to make clear, however, that we do not interpret the Workmen's Compensation Law, F.S.A. section 440.01 et seq., as requiring that an injury

'by accident' proceed from an unexpected *cause*. Section 440.02 (19) of the law defines 'accident' as 'an unexpected or unusual event, happening suddenly.' The Thorndike-Barnhart Dictionary defines 'event' as '1. a happening, 2. result; outcome.' To like effect are the definitions given in The Oxford English Dictionary and [1] Bouv. Law Dict., Rawle's Third Revision, page 101. It is enough, then, if there is an unexpected *result,* even though there was no unexpected *cause,* such as a slip, fall or misstep, in order to constitute an 'accident' within the meaning of the Workmen's Compensation Law; and insofar as the Mc-Neill [McNeill v. Thompson, Fla., 53 So. (2d) 868] and Peterson [Peterson v. City Comm., Fla., 44 So. (2d) 423] cases, supra, hold that an injury is not compensable if it happens while the claimant is performing his ordinary work in the usual manner, these decisions are hereby modified, and we re-affirm the rule laid down in Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So. (2d) 790, that an unexpected injury received in the ordinary performance of a duty in the usual manner is an injury 'by accident' within the purview of the Workmen's Compensation Law, without the showing of anything fortuitous. * * * It is the unexpected and intentional effect of the strain or exertion that is covered by the Workmen's Compensation Law as an injury 'by accident' and a literal showing of an 'accident,' such as a slip, fall or misstep is *not* a prerequisite to recovery.'' To the same effect are Furtardo v. American Export Airlines, Inc., 274 App. Div. 954, 83 N.Y.S. (2d) 745; Masse v. James H. Robinson Co., 301 N.Y. 34, 92 N.E. (2d) 56; Cavanaugh v. Murphy Varnish Co., 130 N.J.L. 107, 31 A. (2d) 759; United States Fidelity & Guaranty Co. v. Industrial Comm., 96 Colo. 571, 45 Pac. (2d) 895; Geltman v. Reliable Linen & Supply Co., 128 N.J.L. 443, 25 A. (2d) 894, 139 A.L.R. 1465; Choctaw County v. Bateman, 208 Okl. 16, 252 Pac. (2d) 465, and 8 N.A.C.C.A. Journal 55; Gavula v. Sims Co., 155 Pa. Super. 206, 38 A. (2d) 482; Andrews Min. & Mill. Co. v. Atkinson, 192 Okl. 322, 135 Pac. (2d) 960; Carden Min. & Mill. Co. v. Yost, 193 Okl. 423, 144 Pac. (2d) 969; Guay v. Brown Co.,

83 N.H. 392, 142 A. 697, 60 A.L.R. 1284; Carroll v. Industrial Comm., 69 Colo. 473, 195 Pac. 1097, 19 A.L.R. 107. The foregoing cases, though the statutes involved are not the same as ours, sustain the conclusion that where there is an unexpected internal failure of the system to function normally caused by unusual stress and strain in the employment, the requirement of an "accident" is met within the meaning of the acts allowing compensation for injuries or death from accident. For the same reason an unexpected internal failure from such stress and strain constitutes a "fortuitous event" within the meaning of our statute.

If, as the board found, the death was caused by a failure of the heart by reason of its previously diseased condition, the evidence sustains the conclusion that the previously diseased condition of the heart was accelerated and aggravated by the extraordinary stress and strain that Rathbun endured in his employment and comes well within the rule of the Nicholson case, supra, and kindred cases by this court.

That it is sufficient to render collapse from a heart attack compensable when caused by strain or exertion occurring while performing the usual and normal incidents of the employment is recognized in Larson on Workmen's Compensation Law Vol. 1, section 38, page 516 et seq., and cases therein cited showing that this rule is sustained by most of the courts. Id. page 577. The heart cases are similar in principle to the exposure cases which we have recognized and followed in this state. See Wiggins v. Industrial Acc. Board, 54 Mont. 335, 170 Pac. 9, L.R.A. 1918F, 932, Ann. Cas. 1918E, 1164; Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 40 Pac. (2d) 43; Ryan v. Industrial Acc. Board, 100 Mont. 143, 45 Pac. (2d) 775. It is true in those cases the principle is stressed that before there can be an award for compensation the injured person must have been subjected to more than the ordinary hazards confronting people generally. But that rule if applicable to a case such as this is met by the fact that decedent worked such long hours and without getting his regular

sleep. Nor is the fact of importance that sleeping accommodations were available to Mr. Rathbun. The fact that he did not take advantage of the sleeping facilities is likewise unimportant. "It is the unexpected and unintentional effect of the strain or exertion, not its external or internal character, that is covered by the compensation law, regardless of how negligent or inadvisable one's conduct may be, provided that there is no intention on the part of the employee to harm or injure himself or another." Glens Falls Indemnity Co. v. Henderson, 5 Cir., 212 F. (2d) 617, 618.

Contributory negligence and assumption of risk are no defenses under the Workmen's Compensation Act, nor is it essential that the employer be guilty of negligence in order to entitle claimant to recover. Nicholson v. Roundup Coal Mining Co., supra [79 Mont. 358, 257 Pac. 276]. The rule declared in the last cited case is applicable here wherein it was said: "In this class of cases the English rule is that, 'if it appears that the employment was one of the contributing causes, without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes, without which the injury which actually followed would not have followed,' an employee is entitled to compensation."

Without encumbering the record with further citation of authorities, we hold that the evidence was sufficient to show that Rathbun suffered an industrial accident within the meaning of the Workmen's Compensation Act, and that plaintiff is entitled to recover.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of plaintiff.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS:

I dissent, and I shall come quickly to the point in giving my reasons.

If the industrial accident board had found that Paul G. Rathbun died because of heart failure proximately caused or aggravated by the rigors of his employment as a truck driver and had accordingly awarded the claimant compensation, the citations in the majority opinion of Hoage v. Royal Indemnity Co., 67 App. D.C. 142, 90 F. (2d) 387; McCormick Lumber Co. v. Department of Labor and Industries, 7 Wash. (2d) 40, 108 Pac. (2d) 807, and like decisions might be apposite, for then the first question here would be whether reasonable men might draw that conclusion from the evidence in this record. If so, we would affirm the finding made, and properly enter upon the inquiry thus presented with which the majority opinion is concerned, i.e., whether in point of law heart failure may be an industrial accident under our statute.

But we have no such case at bar. The board has found to the contrary that Paul G. Rathbun's death was "caused by a failure of the heart by reason of its previously diseased condition." The district court has affirmed upon a finding framed in identical language, but amplified to the point that Rathbun's death was not the "result of any accident or fortuitous event."

If these findings were without support in the evidence, or were unreasonable, arbitrary, or obviously capricious, the majority might appropriately cite and follow Jones v. California Packing Corp., Utah, 244 Pac. (2d) 640. But the board's findings and those of the lower court have solid support in the record.

The testimony of the respondent's witness sharply contradicts the claimant's evidence. There is here a direct conflict upon matters which are material to a determination of the facts upon which this claim rests. The physical examination of the decedent by Dr. Kennan on March 20, 1952, cuts to the heart of the hypothetical questions put to Drs. Powers and Fallon. Dr. Kennan was not questioned further. The opinions of the claimant's medical witnesses are in conflict upon the immediate cause of death, and there was no autopsy to resolve this conflict.

Even so, the questions put to these witnesses incorporated

facts which upon the basis of the contradictory evidence in the record the board and trial court clearly did not find, and were not required to accept as true. These questions omitted obvious facts which both the board and the district court did accept as their findings reflect. Neither Dr. Powers nor Dr. Fallon was a heart specialist. Both were admittedly speculating upon the cause of Rathbun's death; or as Dr. Powers put it he was theorizing only, because he did not have the benefit of any firsthand knowledge.

The testimony offered by the claimant in the district court added nothing to the record made before the board.

In such a case then it is our duty to affirm, where as here, I emphasize, the findings below rest upon substantial and conflicting evidence. We may only ask whether the board might reasonably reach the conclusion which it did. If so, rightly our inquiry ends. Wieri v. Anaconda Copper Mining Co., 116 Mont. 524, 531, 156 Pac. (2d) 838; Anderson v. Amalgamated Sugar Co., 98 Mont. 23, 30, 37 Pac. (2d) 552, and cases there cited; Kerns v. Anaconda Copper Mining Co., 87 Mont. 546, 554, 289 Pac. 563; 71 C. J., Workmen's Compensation Acts, section 1267, page 1290, et seq. Compare Cook v. Hudson, 110 Mont. 263, 276, 277, 103 Pac. (2d) 137; Sanders v. Lucas, 111 Mont. 599, 602, 603, 111 Pac. (2d) 1041; Nolan v. Benninghoff, 64 Mont. 68, 72, 208 Pac. 905, and cases there cited; Hill v. Frank, 118 Mont. 11, 25, 164 Pac. (2d) 1003, and cases there cited; Shepherd & Pierson Co. v. Baker, 81 Mont. 185, 193, 262 Pac. 887; Baker v. Citizens' State Bank, 81 Mont. 543, 547, 548, 264 Pac. 675; Welch v. Thomas, 102 Mont. 591, 602, 603, 61 Pac. (2d) 404.

In summary it seems to me plain that the board's order denying compensation in this case is supported by findings which substantial, credible, competent evidence before it warranted, that indeed reasonable men could come to the conclusion which the board has reached, and which the trial judge has affirmed, and that accordingly it is wholly immaterial whether I would my-

self conclude otherwise, if I were the trier of the facts involved in this controversy. I am not.

I therefore decline at this time to determine whether in Montana we should follow the rule of Jones v. California Packing Corp., supra, or the reasoning of Dunn v. Morrison-Knudson Co., 79 Idaho 210, 260 Pac. (2d) 398, where there was a reversal for want of any evidence to sustain an award of compensation on facts substantially paralleling those of the appeal now submitted. On this record I am required by the law of this state to affirm without conjecturing what my opinion would be upon another case where properly we might vacate the findings below, and substitute our own judgment. That I may not permissibly do here as I read what is before me.