JOHN YOUNG, CLAIMANT AND RESPONDENT, *v.* LIBERTY NATIONAL INSURANCE COMPANY, EMPLOYER AND FIREMAN'S FUND INDEMNITY COMPANY, DEFENDANTS AND APPELLANTS.

No. 10145.
Submitted November 2, 1960. Decided December 16, 1960.
357 P.2d 886.

Keller & Magnuson, Helena, for appellants. Paul T. Keller, argued orally.

Floyd O. Small, Helena, argued orally, for respondent.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the first judicial district, Lewis and Clark county, reversing an order of the Industrial Accident Board and granting an award of compensation to respondent.

Respondent, John Young, was employed by appellant, Liberty National Insurance Company, on August 1, 1949, as a first-aid attendant and was assigned to the Canyon Ferry Dam project. Liberty National was enrolled under plan two of the Work-

men's Compensation Act, R.C.M. 1947, § 92-101, et seq., and appellant, Fireman's Fund Indemnity Company, was its insurer. It was respondent's duty to render first aid to injured employees of the contractor at the project.

On February 13, 1953, an employee of the contractor was electrocuted. This occurred about 12:30 or 1:00 o'clock in the afternoon. Respondent was immediately notified, and went directly to the scene where he applied artificial respiration to the man in an attempt to revive him. There was snow on the ground, the temperature was between ten and fifteen degrees below zero, and a brisk wind was blowing at the time. Respondent remained in a cramped squatting position for about two hours while applying artificial respiration. At 3:00 o'clock P.M. a doctor arrived from Helena and pronounced the man dead. Respondent was not wearing gloves at the time, and he only had regular shoes on his feet. Respondent's hands and legs were cold and slightly numb at the end of the two hours. He was also exhausted as a result of the physical exertion required in giving artificial respiration. Two or three days later respondent's left hand became numb and his left leg began to bother him with pain and swelling. This condition grew steadily worse, and on February 25, 1953, respondent was examined by Dr. Cooney. Dr. Cooney's report described respondent's condition as "Sensory disturbance ulnar distribution right and left hands. Numbness and myalgia right and left calf muscles." Respondent was hospitalized in Helena on February 28, 1953, and he remained there for seven days during which time heat treatments were applied to his left leg. His leg was somewhat better at the end of the hospital stay, but several days thereafter it began to grow progressively worse. Respondent continued in the employment of Liberty National, however, as he was unable to walk any further than a block before his left leg started to hurt, or drive the ambulance which was at his disposal because he was unable to operate the clutch with his left foot, or get around on the job

as he had previous to February 13, he was given a driver for the ambulance and a nurse to help him with his work. Between February 13, 1953, and the date he entered the hospital, respondent spent most of his time in bed.

Firemen's Fund Indemnity Company turned down respondent's claim for compensation, and on August 21, 1953, respondent petitioned the Industrial Accident Board for a hearing. The Board set a hearing for March 3, 1954. The case was later reset for July 12, 1954.

At the hearing before the Industrial Accident Board, Dr. Monserrate testified on behalf of respondent and Dr. Little testified on behalf of appellants. Dr. Monserrate had examined respondent on February 25th and 27th, March 2nd, and April 8th of 1954. Dr. Little had examined him on April 17th and 19th of 1954. Respondent appeared and testified on his own behalf.

Respondent, in addition to his testimony relating to the facts surrounding the incident of February 13, 1953, and the subsequent progression of his condition, stated that he would be 58 years of age on July 14th; that he had never had trouble with his left hand or leg previous to February 13, 1953; that he had always been in good health; that he had never been in a hospital; that he had taken a civil service physical examination in 1949 immediately preceding his employment by Liberty National and that this examination showed him to be in A-1 physical condition; that his employment with Liberty National terminated on June 15, 1954, because the Canyon Ferry project had ended; and that he was unable to perform his duties as he should have after February 13, 1953, but that he was not discharged before the end of the project because he had done a good job for the insurance company the previous four years.

Dr. Monserrate testified that he found a definite weakness and numbness in respondent's left hand and foot. He also stated that X-rays of the left foot revealed some arterioscle-

rosis. Dr. Monserrate said the pain in respondent's left foot was due to an arteriospasm of the arteries and arterioles. It was Dr. Monserrate's opinion that respondent's symptoms and condition were the result of his exposure to the elements on February 13, 1953, and that respondent was partially and permanently disabled from 30 percent to 40 percent.

Dr. Little testified that his examination also revealed some arteriosclerosis; that respondent seemed to have a marked numbness in his left hand; and that there was a marked diminution of pulse in the artery of the left leg. Dr. Little said he did not believe that respondent was suffering from an arteriospasm, and in his opinion, neither the symptoms from which respondent was suffering, nor the condition of arteriosclerosis were caused or aggravated by the exposure and physical exertion of respondent on February 13, 1953.

The Industrial Accident Board after making findings of fact concluded respondent's disability did not result from an industrial accident arising out of and in the course of his employment as defined by the laws of Montana. The Board thereupon denied respondent's claim for compensation and dismissed the case. Respondent made an application for a rehearing which was denied. Respondent then appealed to the district court pursuant to section 92-833, R.C.M. 1947.

The case came on for hearing before the district court on July 15, 1959, and pursuant to stipulation of parties the case was submitted to the court on the record made before the Industrial Accident Board plus additional evidence which was thought to be necessary because of a change in circumstances. This additional evidence was supplied in part, by respondent on his own behalf, by Dr. Clemmons and Dr. Trobough testifying on behalf of respondent, and by Dr. Little who again testified on behalf of appellants.

In testifying before the district court, respondent stated that he left Helena and went to Los Angeles, California, on September 30, 1954; that the condition of his left leg continued

to grow progessively worse; that he was examined by specialists at the Los Angeles County Hospital; that he was advised by them to undergo an arterial graft operation on his left leg; that this operation was performed at the hospital on August 7, 1956; that gangrene developed in his left leg and it was amputated above the knee on September 18, 1956; that he was not trained to do any work other than that of a first-aid man; and that as a result of the amputation he could no longer find employment.

Dr. Clemmons examined respondent on July 13, 1959. He testified that arteriosclerosis may be either a degenerative process in the arteries which generally begins in the latter third of the normal human being's life and grows progressively worse, or a condition caused by a traumatic incident. Dr. Clemmons further testified that exposure to cold plus physical exertion to a point of exhaustion was such a traumatic incident as could produce arteriosclerosis. It was Dr. Clemmons' opinion that respondent's exposure and exertion on February 13, 1953, produced the original change of arteriosclerosis which condition ultimately led to the amputation of his left leg. Dr. Clemmons also stated that, in his opinion, if there were a latent condition of arteriosclerosis present in respondent's leg on February 13, 1953, the extreme cold and physical exertion to which he was exposed that day aggravated or accelerated that condition to the extent that it grew progressively worse resulting in the amputation of his left leg.

Dr. Trobough examined respondent on July 13, 1959. His testimony was substantially the same as Dr. Clemmons', and he also expressed an opinion that there was a direct causal connection between respondent's exposure and exertion on February 13, 1953, and his subsequent loss of his left leg.

Dr. Little re-examined respondent on July 14, 1959. His testimony in effect was that, in his opinion, there was no connection, either causally or by way of aggravation, between respondent's disability and the exposure and exertion which

he had suffered on February 13, 1953, in an attempt to revive the electrocuted worker.

The district court after making findings, which reversed findings made by the Board, concluded that respondent's disability did result from an industrial accident arising out of and in the course of his employment as defined by the laws of Montana, and thereupon entered judgment in favor of respondent ordering that respondent was entitled to compensation benefits in conformity with the laws of Montana in force and effect on February 13, 1953.

Appellants' twelve specifications of error resolve themselves into three contentions.

They are: (1) that the district court erred in reversing findings of fact of the Industrial Accident Board;

(2) that the respondent's disability was not caused or aggravated by the incident of February 13, 1953, but that it was the result of a natural progressive condition brought on by age; and

(3) that the district court erred in reaching the conclusion that the incident of February 13, 1953, was an industrial accident arising out of and in the course of respondent's employment.

In support of their first contention, appellants assert that the district court cannot change, alter, or reverse the findings of the Industrial Accident Board if such findings are supported by substantial evidence. This, however, is clearly erroneous. Section 92-834, R.C.M. 1947, specifically provides that the district court on an appeal from the Board may consider additional evidence which was not before the Board. If this additional evidence is substantial, the district court may be justified in reversing the Board even though the evidence adduced before the Board clearly preponderates in favor of its order. O'Neil v. Industrial Accident Board, 107 Mont. 176, 181, 81 P.2d 688; Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 P.2d 1145.

"* * * where the court has received additional evidence not presented to the board, every presumption is in favor of the correctness of the court's decision." Murphy v. Industrial Accident Board, 93 Mont. 1, 6, 16 P.2d 705, 706. There being this presumption in favor of the correctness of the district court's decision, our province is to determine whether there is any substantial evidence in the record to justify the action of the district court. Murphy v. Industrial Accident Board, supra, 93 Mont. 8, 16 P.2d 705; O'Neil v. Industrial Accident Board, supra, 107 Mont. 176, 81 P.2d 688; Birnie v. United States Gypsum Company, 134 Mont. 39, 328 P.2d 133, 136.

The evidence in the instant case is clearly sufficient to sustain the district court's findings of fact which reversed the findings of fact made by the Board.

Appellants' second contention is nothing more than an assertion that there was no causal connection between respondent's disability and the incident occurring on February 13, 1953. This, however, is a question of fact, and, as there is substantial evidence in the record to show, (1) that respondent's condition immediately following February 13, 1953, and his subsequent disability were caused by the incident occurring on February 13, 1953, or (2) that the incident occurring on February 13, 1953, aggravated a pre-existing condition to the extent that respondent became disabled therefrom, we will not disturb the district court's finding that there was a direct causal connection between the incident of February 13, 1953, and respondent's subsequent disability.

The claimant in an industrial accident case will be denied compensation unless he proves three things: (1) that the worker suffered an injury or disability which resulted from an industrial accident; (2) that the industrial accident arose out of the worker's employment; and (3) that the industrial accident occurred in the course of the worker's employment. Nicholson v. Roundup Coal Min. Co., 79 Mont. 358, 374, 257 P. 270.

466

Appellants insist that the incident occurring on February 13, 1953, was not an industrial accident arising out of and in the course of respondent's employment. There can be an industrial accident within the meaning of the Workmen's Compensation Act even though there is no accident in the ordinary sense, i. e., an act of violence whereby an employee is struck by an object or injured by a fall. Exposure to heat or cold resulting in injury to an employee is an industrial accident which is compensable under our laws. Ryan v. Industrial Accident Board, 100 Mont. 143, 45 P.2d 775; Birdwell v. Three Forks Portland C. Co., 98 Mont. 483, 40 P.2d 43; Nicholson v. Roundup Coal Min. Co., supra, 79 Mont. 358, 257 P. 270. Also, physical exertion by an employee which contributes to, or causes injury to the employee has been held to be an industrial accident. Rathbun v. Taber Tank Lines, Inc., 129 Mont. 121, 283 P.2d 966; Murphy v. Anaconda Co., 133 Mont. 198, 321 P.2d 1094.

Respondent's disability being a direct result of his exposure to extremely cold weather and physical exertion to a point of exhaustion, it is manifest that he was injured as the result of an industrial accident.

There being no question that the incident of February 13, 1953, was within the course of respondent's employment, the only remaining point of appellants' third contention which needs discussion is whether respondent's disability arose out of his employment.

An industrial accident arises out of a worker's employment whenever it results from the worker being exposed by his employment to a greater degree of risk than that to which people of the community generally are subjected. Wiggins v. Industrial Accident Board, 54 Mont. 335, 170 P. 9, L.R.A. 1918F, 932.

The particular circumstances under which respondent's employment was being pursued on February 13, 1953, did subject him to a greater risk of being injured by the cold weather than

were people of the community in general; therefore, it can be fairly said that his disability arose out of his employment.

In its judgment the district court ordered compensation from June 15, 1953, whereas the record reveals that respondent was employed until June 15, 1954. The cause is remanded to the district court with instructions to amend its judgment to provide compensation from June 15, 1954, and as so amended the judgment is affirmed.

MR. JUSTICES ADAIR, ANGSTMAN and CASTLES concur.

MR. JUSTICE BOTTOMLY not participating.