JOHN C. PROFITT, CLAIMANT AND RESPONDENT, *v.* J. ·G.
WATTS CONSTRUCTION COMPANY, EMPLOYER ·AND
APPELLANT, AND INDUSTRIAL ACCIDENT BOARD, IN-
SURANCE CARRIER AND RESPONDENT.

No. 10586
Submitted October 7, 1963. Decided November 20, 1963.
Rehearing denied January 3, 1964.
387 P.2d 703.

Garlington, Lohn & Robinson; J. C. Garlington and Harold Holt (argued), Missoula, for appellant.

Goldman & Jordan, Lee A. Jordan (argued), Missoula, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court affirming a finding by the Industrial Accident Board that a disability sustained by the respondent, John C. Profitt, while employed by the appellant, J. G. Watts Construction Company, is not compensable under the Montana Workmen's Compensation Act.

This cause was previously before this court on the question of whether or not the employer was entitled to a hearing before the Industrial Accident Board to determine the compensability of a claim filed by the employee. In our opinion, Profitt v. J. G. Watts Const. Co., 140 Mont. 265, 370 P.2d 878, we held that an employer was so entitled, and the matter was remanded for that purpose. Such hearing was held, followed by the appeal to the district court and entry of the judgment from which this appeal is taken.

The disability sustained by Mr. Profitt resulted in an action in the Federal Court, culminating in the recovery by him of a judgment against his former employer. In the proceedings with which we are concerned on this appeal, i. e., those before the Industrial Accident Board and before the District Court, the

transcript of the trial before the Federal Court was, by agreement of the parties, submitted as reflecting the facts pertinent to the question of compensability of Mr. Profitt's disability under the Montana Workmen's Compensation Act. Therefore, for the purpose of the present decision, it suffices to set forth excerpts from the findings of fact of the Federal Court which we deem pertinent to our disposition of this appeal:

"I. At all times herein mentioned the plaintiff was a citizen and resident of the State of Montana; that the defendant was a Washington corporation with its principal place of business at Salem, Oregon.

"II. In the years 1958 and 1959, the defendant, J. G. Watts Construction Company, was engaged in the construction of a radar station or base for the United States Air Force near Lakeside, Flathead County, Montana; for some years prior thereto said company had been engaged in the general construction business and had been performing work similar to that involved in the construction of the Lakeside radar base.

"III. On or about June 15, 1959, the plaintiff was hired by the defendant and for a period of about 10 days was employed as a laborer on the Lakeside radar project and thereafter, commencing on June 25, 1959, the plaintiff was transferred to a portable cement batch plant where he worked as the batch plant operator until September 4, 1959.

"IV. Said batch plant consisted of two hoppers or bins, one above the other, mounted on legs of sufficient height to permit a truck with a cement mixer mounted on it to drive under and be loaded from the lower hopper. Dry sand and gravel were loaded into the upper hopper by means of a clam shell. A platform was built around the plant between the upper and lower hoppers and about 20 feet above the ground, and sacked cement was raised to this platform also by means of the clam shell. Located on the platform were levers which could be operated to permit the sand and gravel to fall from the upper hopper into the lower hopper and also a scale to weigh the

amount of sand and gravel which was permitted to fall into the lower hopper. The plaintiff's duties as batch plant operator were to weigh out the desired amount of sand and gravel into the lower hopper and then to split the sacks and pour the desired amount of cement into the lower hopper and then to dump the sand, gravel and cement from the lower hopper into the mixer truck below. Water was added to the sand, gravel and cement in the mixer truck which then delivered the mixed concrete to wherever it may have been needed on the project.

"V.  In his duties as batch plant operator the plaintiff was exposed to large quantities of dust from the cement, sand and gravel as they were dropped into the lower hopper and from the lower hopper into the truck. Because the scales had to be watched while the sand and gravel were dropped, in order that the correct amount be dropped, and because the cement had been poured into the lower hopper by hand from the platform about 20 feet above the ground, there was no way in which the plaintiff or anyone operating the batch plant could avoid the dirt and dust which billowed up whenever a batch of concrete was mixed. The plant was located on a mountain at approximately 7,000 feet elevation and the wind blew almost constantly. The prevailing direction of the wind carried the dust to the operator and added to the amount of dust which enveloped him during the mixing operations.

"VI.  As a result of working in the dust as aforesaid, the plaintiff developed a cough a few weeks after he started to work on the batch plant and the cough became gradually worse until plaintiff was forced to consult a doctor because of the cough in August, 1959. The cough was accompanied by severe chest pain, and by September 4, 1959, the plaintiff was forced to stop working and he has been unable to work since.

"VII.  Prior to the time he went to work on the batch plant, plaintiff was a strong, able-bodied man with great working capacity and endurance. He earned his living at various types of hard labor, and particularly in work in logging camps he

214

exhibited great physical endurance. Since working on the batch plant plaintiff's lungs have been damaged and he suffers from severe Pulmonary insufficiency and emphysema and ischemia of the heart muscles secondary to his pulmonary condition, which render him totally and permanently disabled and unable to engage in manual labor of any kind. He has had no earnings at all since he quit working for defendant in September, 1959, and he and his family have been dependent upon Welfare for their support. The lung and heart condition which plaintiff suffers from is permanent and will not improve and such condition was proximately caused by his employment on the batch plant of the defendant company.

"VIII. The defendant J. G. Watts Construction Company, through its general superintendent, knew that employees should not be permitted to work on said batch plant without the use of a respirator because of the dust which emanated therefrom and the general superintendent issued an order to the foreman that the employees operating the batch plant be required to wear a respirator; that notwithstanding this knowledge and the order issued by its general superintendent, the defendant negligently permitted the plaintiff to work on said batch plant without a respirator and negligently failed to furnish a respirator to the plaintiff and such negligence on the part of the defendant is the proximate cause of plaintiff's disability."

In order to evaluate these facts in the light of the applicable legal authorities, it is necessary to place the facts in a perspective which will make the legal authorities meaningful. The operative cause of Mr. Profitt's disability was his exposure, during working hours, for a period of approximately two and one half months, to dust from cement, sand and gravel. Because of the conditions and nature of his employment, that exposure was an inherent characteristic of his particular job and, obviously, was neither unforeseen nor unexpected. The lung condition resulting from the exposure did not occur suddenly, but,

rather, was gradual in its inception and grew progressively worse with the passage of time during which Mr. Profitt remained on the batch plant job. Moreover, Mr. Profitt knew the job was having an adverse effect upon his health and his employer had knowledge of the need for a respirator.

The parties to this appeal agree that the only question before the court is whether, under the above facts, Mr. Profitt has sustained a compensable injury within the meaning of section 92-418, R.C.M.1947, (the section was amended in 1961, but, since the events in question occurred in 1959, we are now concerned only with the statute as it read prior to the amendment). That his disability was one arising out of and in the course of his employment is not in issue.

Section 92-418, supra, as it read at the time of Mr. Profitt's injury, provided: " 'Injury' or 'injured' refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease."

Unless we find that the disability is "an injury resulting from some fortuitous event," the judgment of the district court must be affirmed.

The term "fortuitous event" has been defined by this court as an event happening by chance or accident; coming or occurring unexpectedly or without known cause; and has been equated with the term industrial accident. Rathbun v. Taber Tank Lines, Inc., 129 Mont. 121, 127, 283 P.2d 966 (1955). The statutory requirement that a fortuitous event, or accident must transpire before an injury or disability is compensable will be satisfied if either the cause of the injury is fortuitous or the injury itself is a fortuitous event. Murphy v. The Anaconda Co., 133 Mont. 198, 321 P.2d 1094 (1958).

Consequently, if the injury or disability is a fortuitous event, within the meaning of the statute, it will be compensable regardless of the fact that the individual was performing a task routine to the particular employment and the fact that the injury was not precipitated by an extraordinary occur-

rence, such as a fall. For instance, under the statute before amendment, it was held that death by heart failure while the worker was performing a task which is routine to the particular job could be compensable, assuming a causal relationship between the job and the internal breakdown. Murphy v. The Anaconda Co., supra; Rathbun v. Taber Tank Lines, supra. Similarly, under the former statute it was held that death or disability resulting from exposure to conditions of heat or cold, which conditions are inherent in the particular job involved were compensable. Young v. Liberty National Insurance Co., 138 Mont. 458, 357 P.2d 886 (1960); Ryan v. Industrial Accident Board, 100 Mont. 143, 45 P.2d 775 (1935); Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 P. 270 (1927).

In the instant case, it is clear that the cause of Mr. Profitt's disability, i. e., his exposure to dust, cannot be deemed a fortuitous event, since such exposure was a normal incident of his job. Therefore, the question narrows down to whether the disability itself, as distinguished from the cause thereof, may be classified as a fortuitous event. As stated earlier in this opinion, "fortuitous" has been defined by this court as "happening by chance or accident; coming or occurring unexpectedly or without known cause." We are of the opinion that the disability in question is not a fortuitous event within the meaning of the statute. As stated in the findings of fact of the Federal Court quoted above, Mr. Profitt developed a cough shortly after he commenced the batch plant job, and his condition steadily deteriorated until he was forced to quit work. He knew the cause of his cough was his exposure to dust at the batch plant and that his condition was gradually increasing in severity. His employer, through its general superintendent, was aware of the dangerous condition engendered by the dust emanating from the batch plant. Under these circumstances, we are constrained to hold that Mr. Profitt's disability cannot be characterized a fortuitous event, within the definition set forth above.

The judgment of the district court is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON and DOYLE, concur.

MR. JUSTICE ADAIR, dissenting:

I dissent. In my opinion the workman is entitled to compensation.