CARDEN MINING & MILLING CO. v. YOST et al.

No. 31255. Nov. 30, 1943.

Rehearing Denied Jan. 25, 9144.

*144 P. 2d 969.*

Everett Petry, of Tulsa, and Looney, Watts, Fenton & Eberle, of Oklahoma City, for petitioners.

A. L. Commons and H. G. E. Beauchamp, both of Miami, and Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, J. This is an original proceeding instituted in this court by Carden Mining & Milling Co. (employer) and National Mutual Casualty Company (insurance carrier) to review an award of the State Industrial Commission to Tom P. Yost (claimant before the State Industrial Commission, respondent herein) for temporary total and subsequent permanent partial disability due to an injury to the heart and determined to have resulted from an "accidental personal injury."

The petitioner challenges the sufficiency of the evidence to support the view that claimant's disability resulted from an "accidental personal injury" arising out of his employment.

On the 21st day of February, 1941, the claimant was employed by and working for the Carden Mining & Milling Company at a zinc mine known as Carden Mine No. 2, located in Ottawa county, Okla.

The claimant had been working for the company at intervals since 1931. On the particular date above mentioned the company was working chat or tailings for the purpose of smelting zinc. The tailings consisted of large "hill-like" accumulations of loose material deposited in connection with prior mining operations.

In the course of his duties as employee the claimant at frequent intervals was compelled to climb the chat pile. The pile was exceptionally steep and difficult to climb. The estimated distance to the top of the pile was 140 feet and the record indicates that one undertaking the climb would sink almost "knee-deep" in the loose material.

According to the claimant's statement the two weeks' work immediately preceding and including February 21, 1941, had been the hardest and most strenuous in his experience and the day in question was unusually difficult in that his duties had required more frequent trips up the steep and yielding incline of the chat pile.

On his 22nd trip that day, when he was exerting himself in an upward climb and was about two-thirds of the way to his destination, he felt a sudden, sharp pain "like a knife jabbing him in the heart." He reported his experience to a foreman and to a fellow employee. The latter assisted him by finishing or assisting him to finish his "shift."

Later on the date of the injury he reported to a hospital, where he received medical attention. He was under treatment of a doctor connected with the hospital until April. This medical attention was at the hand of doctors used by the petitioners herein. It seems that on February 22nd claimant visited a doctor of his own choice, who, although he made an examination, advised him to continue treatment with the doctors who acted for the petitioners.

The claimant's doctor determined from his examination of the claimant that he was then suffering from "acute dilatation" of the heart. Later, on April 9th, he made another examination and determined that claimant was still suffering from dilatation of the heart. The doctor entertained the view that the acute dilatation of the heart was "caused from an excessive amount of physical exertion in climbing the tailing pile" and so testified before the State Industrial Commission. The doctor entertained the view that claimant was totally and permanently disabled by reason of the heart condition. He expressed his opinion under oath before the commission.

Another doctor, a heart specialist, testified in part as follows:

"Q. What kind of examination did you make. A. Regular examination, physical examination and fluoroscopic examination and electrocardiogram. Q. As a result of your examination, what

were your findings? A. He had a systolic murmur at apex, with considerable hypotensity and dilation. Blood pressure 150 over 80. The fluoroscopic examination showed considerable lodging in the left auricle; he has an overworked or abdominal heart from strain. Q. What did the electrocardiograph findings show, Doctor? A. Myocardia damage; damage to the heart muscles. He also has a toxic condition. This man's heart examination shows he has a narrowing of the myocardic valve that interferes with forcing the blood back into the other chambers, with an enlargement of the heart, and myocardia insufficiency. He has an insufficient heart muscle which does not or was not functioning well. Q. Taking into consideration your entire examination and the history of the case, do you have an opinion as to whether or not his injury which he detailed to you as happening on February 21st, 1941, had any connection with the condition you found, that it could be caused by it or aggravated by it. A. I think so. The man's history was that he had been working up until he collapsed. Q. In your opinion, is the present condition the result of the injury he described. A. Yes, sir. Q. Doctor, in your opinion, is this condition permanent? A. Oh, yes."

The claimant also produced evidence tending to establish that he was not suffering from heart trouble before the date above indicated.

There is conflicting medical testimony in the record with which, on this non-jurisdictional issue of fact, we are not here concerned, since we are now searching to determine the existence of evidence before the commission rather than its comparative weight.

Disability attributable to a condition of the heart is compensable under the Workmen's Compensation Law in this jurisdiction if traceable to an accidental personal injury sustained in the course of and arising out of a hazardous employment covered by the act. Richards v. State Industrial Commission, 143 Okla. 29, 287 P. 69. Our holding in this respect is in accord with the view which obtains in most other jurisdictions. See annotations appearing in 19 A.L.R. 95, at 110; 28 A.L.R. 204, at 209; 60 A.L.R. 1299, at 1314.

Thus there is nothing in the nature of the disability which precludes recovery. There is no dispute between the parties that the claimant was engaged in one of those hazardous employments covered by the act, and it is equally certain that the occurrence of his disability was in the course of his employment. Was it the result of an accidental personal injury arising out of the employment as contemplated by 85 O. S. 1941 § 11?

Unquestionably, the claimant has produced evidence to show that his disability is attributable to an acute dilatation of the heart directly and primarily resulting from unusually severe strain and exertion undergone by reason of and in connection with his employment.

In the case of Andrews Mining & Milling Co. v. Atkinson, 192 Okla. 322, 135 P. 2d 960, we pointed out:

"We are committed to the rule that the term 'accidental injury' is not to be given a narrow or restricted meaning, but is to receive a broad and liberal construction, with a view of compensating injured employees where disabilities result from compensable personal injuries . . .

"An 'accident' is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term 'accidental injuries,' the substantive 'injuries' expresses the notion of a thing or event, that is, the wrong or damage done to the person, while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening, or coming by chance or without design, taking place unexpectedly or unintentionally. . . "

Upon consideration of the foregoing principles we therein approved an award for disability resulting from an injury to the ears, which injury was attributable to exposure during the day to vibration in close proximity to the ears. As in the case at bar, there was in that case no sudden isolated incident connected with the injury to the ears but rather a strain throughout the day.

The case is analogous to the case at bar, especially in the element of time of exposure to the producing cause and in the fact that the producing cause was an unusually severe and jeopardous situation that arose in connection with the work. In both cases the injury itself was sudden, fortuitous and unexpected and attributable to the employment.

In Guay v. Brown, 83 N. H. 392, 142 Atl. 697, 60 A. L. R. 1284, it was held that a sudden death due to an acute inflammation of the heart brought on by overexertion while performing usual work fell within the Workmen's Compensation Act of that state. It was held to have arisen out of and in the course of the employment and to have been accidental.

A similar holding was made by the Maine court in Brown v. Otto Nelson Co., 123 Me. 424, 123 Atl. 421, 60 A.L.R. 1293. There the difficulty was acute dilatation of the heart due to shoveling snow. The work was similar to that performed on other days.

The last two cases mentioned are well reasoned and were selected for annotation on the point involved in connection with the annotation in 60 A.L.R. 1299, mentioned supra. Notice, also, Cherdron Construction Co. v. Simkins, 61 Utah, 493, 214 P. 593, and Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 P. 270. Other cases dealing with this subject are collected in the foregoing annotations. Further light is shed upon the question by cases collected in annotations appearing in 109 A. L.R. 892 and 6 A.L.R. 1256.

Upon consideration of our own prior opinions and the foregoing authorities from other jurisdictions, we are of the opinion, and hold, that the claimant produced evidence sufficient to justify the award made by the State Industrial Commission, and that the same should be affirmed.

There is in this case the element of unusual severity of strain and exertion immediately attending the precipitation of the injury which emphasizes claimant's right to prevail.

The award of the commission is affirmed.

CORN, C. J., and RILEY, OSBORN, WELCH, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., dissents. BAYLESS, J., absent.