SPECIAL INDEMNITY FUND v. CLIFT et al.

L. EATON WHOLESALE FEED CO. et al. v. CLIFT et al.

Nos. 34769, 34776. Dec. 11, 1951.

*238 P. 2d 817.*

Pierce, Rucker, Mock, Tabor & Duncan, Oklahoma City, for petitioners L. Eaton Wholesale Feed Company and Traders & General Insurance Company.

Mont R. Powell, Anthony R. Kane, and Sam Hill, Oklahoma City, for petitioner Special Indemnity Fund.

Jack W. Page, Oklahoma City, and Robert W. Hoyland, Guthrie, for respondent Ervin A. Clift.

Mac Q. Williamson, Atty. Gen., for State Industrial Commission.

O'NEAL, J. These cases were separately docketed and separate briefs have been filed on behalf of the employer on the one hand and the Special Indemnity Fund on the other, but both cases are covered by one proceeding before the State Industrial Commission.

Claimant, Ervin A. Clift, a man 56 years of age, was employed by L. Eaton Wholesale Feed Company in its establishment in Guthrie, Oklahoma. At the hearings conducted by the State Industrial Commission claimant stated that on the 9th day of November, 1949, he injured his eye. His testimony is as follows:

"A. While loading some shorts and other sacks of the feed from a truck I noticed a wiggle in my eye something like a wiggle-tail or snake. Q. What was in your left eye? A. That was in my left eye. Q. What were you doing when you first noticed that? A. Well I was getting some feed ready to send out to a customer. Q. What kind of feed, how much did it weigh? A. One hundred pound feed, as I remember it was shorts and cotton seed meal—three or four sacks. Q. Can you tell the court about what time of the day that was, if you remember? A. I think it was pretty close to 2:30 in the afternoon, about an hour after I got back from lunch. I get back at 1:30. Q. Did you report that occurrence to either Mr. or Mrs. Eaton, the owners of this business? A. Well, as I remember, Mr. or Mrs. Eaton wasn't there at the place that evening but I did make a remark down at the office to a girl that works in the office, and I think the gentleman, Mr. Lloyd Jay, the bookkeeper, I made a remark to them that I saw wiggles in my eye, like a snake. The girl made some remark. It was the next afternoon, it kept worrying me and I reported it to Mrs. Eaton. Q. Mrs. LaVerdia Eaton? A. Yes, sir. Q. She is the wife of L. Eaton and a part owner in this business is she not? A. That's right."

He went to Dr. Miller in Guthrie, Oklahoma, who told him he had a slight hemorrhage of the left eye but not to worry about it. He returned to work on the 14th day of November and worked until the 19th when he sustained another accident. His testimony is as follows:

"Q. What, if anything, occurred, Mr. Clift, after you went to work and during the week of the 14th to the 19th? A. Well I done the usual work all week and about 4:30 in the evening of November 19th, I got an order for a sack of Pillsbury shorts, these shorts were stacked against the east wall of the warehouse and the Blackwell shorts had been stacked in front of them and we had to get over them to load it out. Q. How high was this stack of Blackwell shorts? A. If I remember right it was over my head. Q. How high? A. It was approximately a foot over my head or more than that. Q. Tell the court in what manner you had to get over that stack of shorts, Blackwell shorts in order to get to the Pillsbury shorts? A. Well I clum up over the Blackwell shorts, slid down the hole where the Pillsbury shorts was, picked up a sack of shorts throwed it up on top of the other shorts and clum up there and slid down loaded it on a truck and went out to the customer. Q. Had you been obliged to do that several times that day or was it just once? A. That was the first time that day as I recall. Q. Tell the court what you did there? A. Well I picked up this sack of shorts and throwed it up there and when I did why I became suddenly blind in left eye. Q. I will ask you whether or not it required and if you exerted a sudden severe muscular strain in throwing that sack of shorts, Pillsbury shorts over this stack of Blackwell shorts? By Mr. Mock: That is leading and suggestive, object to it for that reason. By the Court: I think it is. He can tell how he did the work and whether or not he had to exert himself. A. I sure did, and it was a small hole and there is quite an exertion if you get down in a hole because you can't get back far enough to throw them. Q. How wide was this hole that you were in, tell Judge Thomas? A. It is as big as one feed sack which would be between two and a half and three feet wide. Q. And you picked it up? A. I picked the shorts up and shoved it up over this other. Q. How much would that sack of shorts

weigh? A. Well a hundred pounds net. Q. One hundred net? A. Yes, it would be a hundred and three or four, sack and all. Q. You say this incident is when you lost your sight? A. I did. Q. In your left eye? A. Yes, sir."

Dr. Guthrie filed a report and testified that claimant gave him the history of a strain and sudden loss of vision; that on November 9, 1949, he was doing heavy work lifting sacks when he noticed a slight wiggle, as he called it, in his left eye about 4:30 in the afternoon of the 19th day of November, while lifting a heavy sack of feed over a stack of feed about a foot higher than his head he suddenly became totally blind in his left eye. He testified that claimant had a detached retina and is totally blind in the left eye; that this in his opinion is due to the sudden exertion of lifting the sack on November 19, 1949. He also stated that prior to the accidental injury on either November 9th or November 19th, claimant had a defective left eye; that prior to the accidental injury mentioned above claimant had a total loss of vision in his right eye.

Dr. Ferguson examined claimant on the 22nd day of November, 1949. At that time he was given no history of an accidental injury. Later claimant told him of lifting sacks and was told by Dr. Ferguson that lifting sacks could cause a detachment of the retina. On cross-examination Dr. Ferguson stated definitely that there must have been something fundamentally wrong with the left eye prior to the heavy lifting and that the heavy lifting as described by claimant with regard to the sacks on the 19th day of November, 1949, would cause a detachment of the retina.

Claimant had been blind in his right eye since 1936. This fact is supported by the testimony of both the above physicians. Following the hearings the State Industrial Commission entered an order which in part is as follows:

"That on November 9th and 19th, 1949, the claimant herein was in the employ of the respondent, engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and on said dates he sustained an accidental, personal injury, arising out of and in the course of his employment, to his left eye, resulting in a detached retina of the left eye.

"That claimant's wages at the time of said injury were sufficient to fix his rate of compensation at $25.00 per week.

"That respondent herein had actual notice of said injury, and that the failure to give the statutory written notice should be and is excused for the reason that the respondent was not prejudiced because of the absence of such written notice.

"That as a result of said injury, claimant has total blindness in the left eye for which he is entitled to compensation for 100 weeks at $25.00 per week, or the sum of $2,500.00; that there is now due the sum of $650.00, or 26 weeks, computed from November 24, 1949, to May 25, 1950.

"That prior to claimant's accidental personal injuries of November 9 and 19th, 1949, the claimant herein was a physically impaired person within the meaning of the Workmen's Compensation Law, by reason of the fact that he has loss of 90 per cent of the vision of his right eye and he is industrially blind and has been since 1936, and that such impairment was noticeable to an ordinary layman, and that by reason of the combination of claimant's industrial blindness in his right eye since 1936 and his injury of November 9 and 19, 1949, to his left eye resulting in 100 per cent loss of vision of his left eye, claimant's disability has been materially increased to the extent that he is now permanently and totally disabled from the performance of ordinary manual labor, and he is entitled to compensation therefor for 500 weeks, less the 100 weeks herein ordered paid by the respondent and insurance carrier, leaving 400 weeks at $25.00 per week, or the sum of $10,000.00 to be paid claimant by the Special Indemnity Fund."

In seeking to vacate the award both the employer and Special Indemnity

Fund argue that the evidence is wholly insufficient to establish a disability as the result of an accidental injury. We have repeatedly held that an injury occasioned by a strain which caused a dormant or latent condition to light up or become apparent and active was an accidental injury within the Workmen's Compensation Act. Carden Mining & Milling Co. v. Yost, 193 Okla. 423, 144 P. 2d 969; Cromwell Franklin Oil Co. v. Cox, 147 Okla. 226, 296 P. 446; Oklahoma Natural Gas Co. v. White, 187 Okla. 627, 105 P. 2d 225; Eagle-Picher Mining & Smelting Co. v. Loyd, 192 Okla. 554, 138 P. 2d 536; Andrews Mining & Milling Co. v. Atkinson, 192 Okla. 322, 135 P. 2d 960; Special Indemnity Fund v. McFee, 200 Okla. 288, 193 P. 2d 301.

In National Biscuit Co. v. Lout, 179 Okla. 259, at page 261, 65 P. 2d 497, we quoted with approval from the dissenting opinion of Mr. Justice Philbrook, in the case of Patrick v. Ham Co. (Me.) 111 Atl. 912, 13 A.L.R. 427-436, as follows:

" . . . the term 'accident' as employed in the Compensation Acts, is broad enough to include an injury from muscular strain or physical overexertion such as hernia, or rupture, or bursting of blood vessels. This is true, although the physical condition of the employee is such as to predispose him to the injury. But it has been held there must be a definite particular occurrence to which the injury can be attributed."

In Special Indemnity Fund v. McFee, supra, we stated:

"In the instant case the evidence sufficiently shows a strain which, according to the testimony of respondent's physician, directly led to the hemorrhage in his eye, which resulted in blindness. The strain of lifting the beam, while one frequently undertaken by respondent, was not what could be termed an ordinary occurrence, as was the stooping over in the cases above cites. . ."

Similar circumstances were present in the case at bar. Both physicians were definite in stating that the lifting of a heavy sack into a position higher than the claimant's head would cause a detachment of the retina resulting in total blindness in the left eye. The evidence is sufficient to support the finding of the State Industrial Commission that there was an accidental injury causing the total loss of the left eye.

In a second proposition the Special Indemnity Fund argues that the finding of the State Industrial Commission is indefinite and uncertain and that the cause should be remanded to the State Industrial Commission for further findings under the rule announced in McCarthy v. Forbes Painting and Decorating Co., 200 Okla. 555, 198 P. 2d 212, and cases therein cited. The argument in this respect appears to be a combination of the claim that the first accident of November 9th caused the disability and not the accidental injury of November 19th, and the claim that the State Industrial Commission erred in finding that both accidents caused the disability. Special Indemnity Fund relies upon the testimony of certain lay witnesses to the effect that following the incident of November 9th claimant was unable to distinguish articles such as where he had placed his cigarette without groping for said articles. The medical testimony is to the effect that the last accident caused the disability. Lay witnesses cannot establish the cause and extent of such disability, but rather it must be established by the testimony of skilled medical experts. City of Kingfisher v. Jenkins, 168 Okla. 624, 33 P. 2d 1094, and related cases.

If the commission erred in finding that the incident of November 9, 1949, aided in causing the disability, such error was of no legal consequence for the record fully supports the finding that the disability was due to the accidental injury in lifting the sacks on November 19, 1949.

Finding no error justifying the vacation of the award, the award is sustained.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.