W. O. MERRILL and Ella Cowling, d/b/a
Riteway Laundry and Dry Cleaners, a Co-
partnership; and American Surety Com-
pany, a Corporaton, Petitioners,

v.

STATE INDUSTRIAL COMMISSION of the
State of Oklahoma, and John W.
Roberts, Respondents.

No. 36706.

Supreme Court of Oklahoma.

Nov. 15, 1955.

Rehearing Denied Dec. 13, 1955.

1096

Bell & Tucker, McAlester, Pierce, Mock & Duncan, Oklahoma City, for petitioners.

Brown, Brown & Brown, McAlester, Mac Q. Williamson, Atty. Gen., for respondents.

JACKSON, Justice.

This is an original proceeding instituted in this court by W. O. Merrill and Ella Cowling, doing business under the firm name of Riteway Laundry and Dry Cleaners, a co-partnership, and its insurance carrier, to review an award of the State Industrial Commission awarding compensation to John W. Roberts. John W. Roberts will hereafter be referred to as claimant and Riteway Laundry and Dry Cleaners and its insurance carrier as respondents.

Claimant's testimony, in substance, is that he has operated a steam press in cleaning establishments for eighteen years, and on Saturday, January 9, 1954, he was operating a steam press in pressing wool clothing for respondents. He admits that he had not been lifting any heavy bundles of clothing, or that the steam press was heavy or hard to operate but does contend that he was operating the press with unusual speed.

His normal routine was to arrive at the shop at 7:00 A.M. each day, take thirty minutes off for lunch, and quit at 3:30 P.M., or earlier if the pressing for the day was completed. On Saturday, he would arrive at 7:00 A.M. and was usually through at, or before noon, and could take the afternoon for fishing or other personal activities.

Claimant further testified that on Saturday, January 9, 1954, he arrived at the shop at 7:00 A.M. and operated the press with unusual speed and pressure. This speed and pressure, according to claimant, was not directed by the respondents but he just wanted to finish and get home as early

as possible. His strongest testimony in this connection is:

"I was wanting to get through kind of early and put a little bit of everything I had into it and I felt all right but in the middle of the morning I broke into a sweat from the waist up. I didn't pay too much attention but immediately following I had a chill and an acute pain in the lower part of my chest and in the upper part of my abdomen.

"* * * I was working much faster and more strenuous. (than usual) * * * No difference in the way the equipment operated but there was a difference in the way I was operating it. I was working faster and under more strain to get through."

Claimant further testified that his press was next to a large window, opened as usual, which let a draft of cold air strike and chill him below the waist while the heat from the press, together with his physical exertion, caused the upper part of his body to perspire freely; he became wet with perspiration from his waist upward. When the pain hit him he sat down for about fifteen minutes and took two or three short rest periods from work and went home about 12:30 P.M. He had some pain through the following Monday and Tuesday, and went to the doctor and was placed in the hospital.

Claimant's family doctor, Dr. S. of McAlester, testified that he first saw the patient on January 12, 1954, at which time claimant gave a history of upper abdominal pain and retrosternal pains for several weeks which claimant attributed to indigestion. Dr. S. further testified:

"From the history given to me by this patient, it is my opinion that this man had a partial coronary obstruction and that under periods of stress he was getting definite anginal symptoms with probably small coronary infarcts at those times. * * * we know that he was a potential candidate for coronary blockage and infarcts. We also know that unusual stress or strain will tend to precipitate acute attacks

of coronary blockage with these conditions existing. Certainly any unusual strain that this man encountered during the time that he was having his distress would have precipitated coronary blockage.

"If we assume, without my own personal knowledge of such facts, that on the Saturday prior to my seeing the patient when he first reported the symptoms, if he was strenuously engaged in physical exercise in the operation of a steam press, perspiring freely in extraordinary activity, then it would by my opinion that the work he was doing either precipitated or contributed to cause the episode or condition from which he is now suffering."

At the close of all the evidence, both for claimant and respondents, the Trial Commissioner found that claimant was engaged in a hazardous occupation and on January 9, 1954, sustained an accidental personal injury arising out of and in the course of his employment, consisting of an aggravation of a pre-existing heart condition, and further finding that respondent was estopped from denying that claimant was engaged in a hazardous occupation since respondents were carrying compensation insurance on claimant. An award for permanent total disability was sustained on appeal to the Commission en banc.

Respondents present their petition here on three propositions:

■ First: The Commission erred in admitting the deposition of claimant taken by respondents before the trial, but admitted in evidence for claimant after claimant had testified in his own behalf before the Trial Commissioner. Assuming, without deciding, that this was error, we hold that no prejudice resulted. The deposition adds nothing to the oral testimony, and in fact we find the deposition less favorable to claimant than his oral testimony.

Second: Error of the Commission in holding that respondents were not prejudiced by claimant's failure to give written notice within the thirty-day period as provided by statute, 85 O.S.1951 § 24. In this connection it is admitted that respondents received their first notice of the claim when it was filed in the State Industrial Commission on April 13, 1954. It is true that respondents knew that claimant had suffered a heart attack but they were not advised or informed that claimant was contending that the attack occurred while on the job, or that he was contending that his employment had anything to do with it. The Commission found that no prejudice resulted by failure of claimant to give written notice within the thirty-day period.

Claimant was in the hospital almost continuously during the first forty five days after the attack. W. O. Merrill, one of the respondents, and manager of the shop, testified that respondents could not have provided any better medical treatment than claimant had received. Four or five of respondents' employees at the shop testified for respondents and sharply contradicted much of claimant's material testimony. No complaint was made by any of respondents' witnesses or by respondent, Merrill, that time had dimmed their memories, and there is no contention by respondents that material witnesses were unavailable at the time of trial.

■ We think the evidence above detailed is sufficient to sustain the finding of the Commission that respondents were not prejudiced by reason of failure of claimant to give them written notice of his injury within the thirty-day statutory period. The Commission may excuse the giving of notice when employer has not been prejudiced. Jones v. Oliver, 204 Okl. 164, 228 P.2d 173; Massachusetts Bonding & Ins. Co. v. Welch, 195 Okl. 636, 159 P.2d 1017.

Respondents' third and last contention is that the finding and conclusion of the Commission that claimant sustained an accidental injury arising out of and in the course of his employment is not supported by any competent evidence.

We do not understand respondents to say that claimant and Dr. S. were incompetent witnesses or that their testimony was incompetent. We construe their contention to be that claimant's evidence, though competent, is not sufficient to jus-

tify an award. While respondents make a strong and able argument as to the weight and value of the testimony in this case, they overlook the limited power and jurisdiction of this court in compensation insurance cases, as set forth in 85 O.S.1951 § 26, in the following language:

"The decision of the Commission shall be final as to all questions of fact, and except as provided in Section 7297 (85 O.S.1951 § 29), of this Article, as to all questions of law."

■ This court is committed to the rule that findings of fact made by the State Industrial Commission are conclusive and binding upon this court, where there is any competent evidence reasonably tending to support such findings. New York Indemnity Ins. Co. v. Ferrell, 142 Okl. 235, 286 P. 314.

In the case now before us there is testimony to the effect that claimant was working much faster and more strenuously than usual and was putting "a little bit of everything (he) had into it." His doctor testified that if claimant was strenuously engaged in physical exercise in the operation of the steam press, perspiring freely in extraordinary activity, then this work would either precipitate or contribute to cause the attack, or the condition from which claimant is now suffering.

■ The Commission held that claimant sustained an accidental personal injury arising out of and in the course of his employment. There is testimony to support such finding and decision.

■ A heart attack caused or precipitated by unusual strain or exertion immediately preceding the attack is compensable under the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq. Carden Mining & Milling Co. v. Yost, 193 Okl. 423, 144 P.2d 969; State Highway Dept. v. Powell, Okl., 258 P.2d 1189.

Award sustained.

WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD and HUNT, JJ., concur.

JOHNSON, C. J., dissents.