Douglas RILEY, Petitioner,

v.

CLARK BROTHERS WELL SERVICE CO. and Tri-State Insurance Co., Respondents.

No. 36859.

Supreme Court of Oklahoma.

Feb. 11, 1958.

Fermon Hatcher, Pauls Valley, James R. Eagleton, Oklahoma City, for petitioner.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

This proceeding is brought by Douglas Riley to review an order of the State Industrial Commission denying compensation on a claim filed against Clark Brothers Well Service Company, his employer, and its insurance carrier, Tri-State Insurance Company. Riley will hereinafter be referred to as claimant.

On July 1, 1954, claimant filed his claim in which he states that on June 11, 1954, while in the employ of Clark Brothers Well Service Company he sustained an accidental injury consisting of a sunstroke or heat exhaustion; that as a result thereof he has been to some extent permanently disabled.

The trial commissioner at the close of the evidence found that claimant did not sustain an accidental personal injury arising out of and in the course of his employment as claimed in his Form 3 and upon such finding entered an order denying compensation.

Petitioner brings the case here to review this order and contends that it is not supported by the evidence and is contrary to law.

The evidence on behalf of the claimant consists of the testimony of the claimant, Rubin Williams, Jewel Willingham, Elwin Coffee and Dr. B.

Claimant testified that he had been working for Clark Brothers for about four months before June 11, 1954, the date of the alleged injury. That he went to work at 1:00 P.M. and that on about 5:00 P.M. of the same day he sustained an accidental injury consisting of a heatstroke. That claimant and other employees were engaged in "rigging up" preparatory to the drilling of an oilwell at a location in the Washita River bottom approximately three miles southwest of Lindsay. That it was a very warm day and that while he was digging a hole in which to bury guy wires he became sick at his stomach and vomited. That the hole he was digging was approximately six feet deep. That the location at which he was working was approximately five hundred yards from the Washita River with a thick growth of timber on each side. That the next morning after he sustained his injury he went to the office of Dr. L. at Lexington for treatment, and was told by Dr. L. "that he had gotten too hot and then gave him some advise and a prescription." That he rested at his home for several weeks and felt better until he got out in the sun after which his trouble re-occurred. That about three weeks after the accident he was mowing the lawn at his home with a power mower and completely passed out and was put to bed. That in the latter part of June, 1954, he went to Dr. B., who told him he had gotten too hot. That he was still disabled from working in the sun. That none of the other employees who were doing the same work as claimant on the day of the injury became ill.

The testimony of Rubin Williams, in substance, was that he had worked on another job for a different company during a portion of 1953 and that claimant's work on that job was satisfactory and that claimant made no complaint about his work during the job.

The witness, Willingham, testified that, he was the father-in-law of the claimant, and that when claimant came home on the evening of June 11, 1954, he noticed that claimant looked pale and sick. That about two weeks after June 11, 1954, claimant became sick while mowing the front yard with a power mower and had to be put to bed.

The testimony of Elwin Coffee, by deposition, corroborated the testimony of claimant, in most details, as to what occurred at the site of alleged injury at the

time and date of the injury. This testimony was greatly weakened, however, upon the introduction in evidence of the written statement of the witness taken at an earlier date. This statement will be referred to later herein.

The medical testimony on behalf of claimant was in the form of a medical report of Dr. B. under date of Oct. 1, 1954. This report and findings thereof was largely based on the history of the case given by claimant to said doctor. In this report it was stated as a part of the history of the case that claimant informed him that he received the injury on June 11, 1954, and that the next day he went to Dr. L. at Lexington and that Doctor L. "told patient he had became too hot and gave advise and prescription." The history given by claimant further went on to state: "Patient rested at home for two weeks and felt better until he got out in the sun when his symptoms would occur. On about June 26, 1954, patient went to Dr. Byrd at Pauls Valley who gave him an intravenous solution and told patient he could return to work after another day's rest. On June 28, 1954, patient reported back to work but the tool pusher refused to allow patient to work. Patient later passed out while mowing his lawn". In this doctor's written opinion it is stated; "Assuming the history to be accurate and the quoting of the previous doctors to be correct I would agree that this patient had heat exhaustion but not heat stroke." This doctor's report then states that he feels that claimant has been temporarily totally disabled to the present time and that his tolerance to heat, particularly the rays of the sun will be lower than that of any normal person for the rest of his life.

It will be noted later in this opinion that the history of the case given by the claimant to Dr. B. is somewhat conflicting with other facts in the case.

The testimony of respondents' witnesses is to the general effect that the hole in which claimant was helping to dig was 3½ feet deep and that the trees on all sides of the hole were approximately a quarter of a mile away from the hole; that these witnesses were doing the same sort of work that claimant was doing and at the same time and place and that none of them became ill; that it was a moderate day. None of these witnesses testified that they saw claimant vomit and none of them testified that claimant told him of his illness but the witness Fletcher, did state that claimant was pale when witness picked him up to take him to work and that claimant had informed him that he had been sitting up with his mother-in-law who had had a heart attack. (Claimant denied making this statement.)

In the deposition of Elwin Coffee hereinbefore referred to the witness stated that on the day of the alleged injury claimant told him he was sick and "he looked pale and vomited a little." This same witness, however several months earlier had made a written statement. Some of the pertinent parts of this statement are, as follows: "I noticed an employee, Douglas Riley vomit a little bit and he told me he felt sick. Riley continued working. Riley said he had been up the night before with his mother-in-law who had had a heart attack * * *. Riley didn't complain to me about getting *to* hot or overheated, and didn't request any medical attention. * * * Riley was a poor employee, and didn't do enough work to get overheated."

Dr. L., hereinbefore referred to, on behalf of respondent, stated:

"I have checked my office records and do not find a record of any treatment or examination of Douglas Riley on or about June 11, 1954.

"It is possible that he may have been in the office but any injury complained of must have been trivial or insignificant. Otherwise a record would have been made."

Dr. B., hereinafter referred to, on behalf of respondent, states in his report as follows:

"As requested we are submitting a report on Mr. Douglas Riley, alleged employee of Clark Brothers Well Serv-

icing Company. We first saw Mr. Riley in the office on June 24, 1954, at which time he claimed to have been overcome by heat while at work that day. Our impression of his case was that he was suffering from a moderate heat exhaustion and we placed him in the hospital that day and he was given an intravenous solution of glucose and saline. He was seen at approximately 7:00 P.M., at which time he appeared to be completely recovered and was discharged from the hospital at approximately 7:00 P.M.

"It is our understanding that Mr. Riley has not been employed by Clark Brothers since June 11, 1954. It appears very unlikely that he could have had this condition since the date of his last employment with Clark Brothers.

"Our diagnosis of heat exhaustion is only a tentative one due to the rapidity of recovery in this case. We have not seen Mr. Riley since his dismissal from the hospital and can only assume that his recovery is complete."

It will be noted that Dr. B. states that he first saw claimant on June 24, and that at that time claimant claimed to have been overcome by heat at work *that day*. Perhaps the trial commissioner might have come to the conclusion that on this date the claimant received his illness while mowing the lawn.

■■ The sole and only question to be determined by this opinion is whether the order of the commission is supported by any competent evidence.

The court is committed to the unbroken rule that findings of fact made by the State Industrial Commission are conclusive and binding upon this court, where there is any competent evidence reasonably tending to support such findings. New York Indemnity Ins. Co. v. Ferrell, 142 Okl. 235, 286 P. 314; Merrill v. State Industrial Commission, Okl., 290 P.2d 1095; Tucker v. American Smelting & Refining Co., Okl., 294 P.2d 812.

There is competent evidence reasonably tending to sustain the findings made by the State Industrial Commission.

Order sustained.