Geneva Irene SHARP, Petitioner,

v.

REDCO CORPORATION, Employer's Casualty Company and the State Industrial Court of the State of Oklahoma, Respondents.

No. 38765.

Supreme Court of Oklahoma.

Sept. 21, 1960.

Davis & Hamilton, Oklahoma City, for petitioner.

Ray Teague, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

JACKSON, Justice.

In this proceeding, claimant Geneva Irene Sharp seeks review of an order of the State Industrial Court denying compensation under the death benefit provisions of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq. Claimant is the widow of John Francis Sharp, deceased, former employee of respondent Redco Corporation, who died on December 20, 1958, as a result of a myocardial infarction and coronary occlusion.

The essential and undisputed facts are summarized, as follows:

Employee was fifty years of age at the time of his death. He had been employed by respondent Redco for approximately two

years and eight months as a liquid petroleum gas loader and general roustabout. He reported for work each morning at the welding shop, where he received instructions from the plant superintendent relative to his duties for that day.

On December 3, 1958, employee and another employee, Dale Jennings, were "rodding the cooler", which consisted of cleaning out pipes with a rod, and employee complained of a catch under his shoulder and had to slow down. Jennings noticed that employee had pain under his arm.

On December 10, 1958, employee and two other employees cleaned up the welding shop, as directed by the superintendent, picking up scrap iron and pipe and moving valves, weighing 50 to 65 pounds, by dragging them across the floor. Employee and another employee then lifted a valve from the floor and placed it in a pick-up truck, transported it to the meter shop and placed it on a work bench. Employee was engaged in grinding the valve for the next four hours, which required movements of the arm and hand and involved very little exertion. A few minutes after employee had finished grinding the valve, he was directed by the plant superintendent to go to the welding shop and cut some gaskets. The superintendent then noticed that employee appeared detached and reacted strangely. Employee went to his car, and the superintendent observed that he was pale and looked like he was suffering and was pretty sick. Employee was taken to his home by two co-employees, arriving about 3:00 p. m. He had his head back, was holding his chest, and appeared to be in great pain. About ten minutes later, Dr. P. arrived at employee's home, and sent him by ambulance to a hospital in Seminole, Oklahoma. Dr. P.'s preliminary diagnosis was coronary occlusion with myocardial infarction, which was confirmed by electrocardiogram on December 16, 1958. Employee died in the hospital on December 20, 1958. The death certificate, which was completed by Dr. P., contained the following entries under "Cause of Death":

| "Death Was Caused By Immediate Cause (A) | Myocardial infarction | Interval Between Onset and Death 4 days |
|---|---|---|
| Conditions, if any, which gave rise to above cause (A), stating the underlying cause last | Due To (B) coronary occlusion | 4 days |
| | Due To (C) arteriosclerotic heart disease | 2 years" |

In January, 1955, employee had been hospitalized for myocardial infarction caused by a coronary occlusion. In November, 1956, employee suffered chest pains and his condition was tentatively diagnosed as myocardial ischemia without infarction, which was defined as a diminution of the blood supply to a certain area of the heart without a complete shutting off of the blood supply. Following the first episode in 1955, employee had been instructed by his doctor to carry on his person medicine commonly referred to as coronary vaso dilators, to be used in event of another similar attack.

The order sought by claimant to be vacated is, in part, as follows:

"The death of John Francis Sharp was the result of arteriosclerosis and pre-existing heart disease and in no manner connected with or due to any accidental injury."

It is claimant's contention that the heart attack which caused the death of the employee was precipitated by physical strain or exertion in the scope of his employment, and, therefore, compensable, and that the order denying an award is contrary to law

and the evidence and is based upon speculation, conjecture, and incompetent evidence.

Specifically, claimant argues that the testimony and opinion of respondent's medical witness was based upon an incomplete and inaccurate history, and was, therefore, of no probative value and insufficient to support the order complained of.

In reviewing an order of the State Industrial Court on a question of fact, it is not our function to weigh the evidence, but to determine whether the order and essential findings are supported by any competent evidence. 85 O.S.1951 § 26; Merrill v. State Industrial Commission et al., Okl., 290 P.2d 1095.

Respondent's medical witness testified that he had reviewed the hospital records pertaining to employee's last illness and death, and obtained a history of his having experienced a heart attack in 1955, necessitating hospitalization, and a recurrence in 1956; that deceased was overweight and hypertensive. In his opinion, the cause of employee's heart attacks in 1955 and 1956 was related to arteriosclerotic heart disease, or hardening of the arteries; that on December 10, 1958, employee was hospitalized for coronary occlusion and myocardial infarction, which is generally the result of arteriosclerosis; that arteriosclerosis ordinarily begins early in life and is progressive, and is aggravated by obesity and high blood pressure; that the fact that employee had been taking medication prescribed by his doctor indicated that he was either having symptoms or that the doctor anticipated further attacks.

The witness received a history that employee went to work about 7:30 in the morning on December 10, 1958; that he and another employee worked for approximately two hours cleaning the welding shop and moving some valves, after which employee ground a valve, which involved only slight exertion, for several hours. In response to a hypothetical question which included the occurrence of a heart attack while engaged in, or shortly after, grinding the valve, the witness stated his opinion that the work performed by employee on the day in question had no aggravating or precipitating effects as to the heart attack he sustained.

On cross-examination, Dr. T. stated that part of the case history was obtained from the hospital records, the death certificate and certificate of the attending physician, Dr. P., and from respondent insurance company.

Claimant cites Acme Flour Mills et al. v. Bray et al., 185 Okl. 516, 94 P.2d 828; Western Good Roads Service Co. v. Coombes et al., 185 Okl. 599, 95 P.2d 633, and other cases, in support of the rule that testimony of a medical witness based on incomplete or inaccurate facts is of no probative value.

We agree with the rule of law relied on by claimant, but think the cases cited are distinguishable on the facts. In Acme Flour Mills v. Bray, supra, we vacated an award based on medical testimony that claimant sustained a strain involving the cord and vessels of the scrotum, where the evidence showed that claimant was suffering from an acute attack of gonorrhea with complications on the date of the alleged accidental injury which necessitated an operation, and the medical witness for claimant was not given that history. In Western Goods Roads Service Co. v. Coombes, supra, the doctor was given a history of a torn cartilage in the knee from twisting, whereas the evidence showed that claimant merely kneeled to fix a sign. At the hearing, the doctor frankly admitted that in all probability the cartilage was torn at some other time.

Claimant argues that respondent's medical witness was not given a history that employee suffered a "strain on the job". Whether or not employee suffered a strain, and if so whether the strain provoked the heart attack, is, we think, a matter of interpretation or opinion. We find that the facts and circumstances surrounding the alleged accidental injury as related by Dr. T. in the history he obtained were

substantially in accordance with the evidence. That Dr. T. placed different interpretations thereon than did claimant's medical witness does not render Dr. T.'s history "incomplete" or "inaccurate". 32 C.J.S. Evidence § 551.

■ We are of the opinion that the medical history supported Dr. T.'s testimony and the court's finding that the employee's death "was the result of arteriosclerosis and pre-existing heart disease and in no manner connected with or due to any accidental injury."

Finally claimant argues that the evidence established that the employee sustained an accidental injury, and that the order of the court to the contrary is not supported by competent evidence.

In Ware et al. v. Wilson & Co. et al., Okl., 322 P.2d 204, 205, we said:

"The claimant furnished medical evidence to the effect that the death resulted from an accidental injury arising out of and in the course of the employment. Respondent furnished medical expert testimony to the contrary. In such case we have several times held that it is neither the province nor the duty of this Court to disturb the finding based thereon."

And in the syllabus, we held:

"In a proceeding to recover death benefits under the Workmen's Compensation Law, 85 O.S.1951 § 22, the cause of death from heart attack is a question of fact based on the testimony of medical experts and where there is any competent evidence given by such experts to sustain the findings of the State Industrial Commission an order based thereon will not be disturbed on review by the Supreme Court."

We conclude that the order of the State Industrial Court is supported by competent evidence.

The order denying an award is sustained.

WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD, IRWIN and BERRY, JJ., concur.